ARNOLD KAYE *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF WESTPORT

SUPERIOR COURT JUDICIAL DISTRICT OF FILE No. 204052
FAIRFIELD AT BRIDGEPORT

Memorandum filed October 14, 1983

*McKeon & McHugh,* for the plaintiff.

*G. Kenneth Bernhard,* town attorney, and *Goldstein & Peck,* for the defendant.

JACOBSON, J. The first amendment provides that "Congress shall make no law . . . abridging the freedom of speech." In a series of decisions beginning with *Gitlow* v. *New York,* 268 U.S. 652, 666, 45 S. Ct. 625, 69 L. Ed. 1138 (1925), the United States Supreme Court held that the liberty of speech, which the first amendment guarantees against abridgement by the federal government, is within the liberty safeguarded by the due process clause of the fourteenth amendment from invasion by state action. The present case presents to this court the question whether video games are within the ambit of constitutionally protected speech.

The plaintiff has urged that video games are a form of free speech and that the restrictions imposed upon him by the defendant commission abridge that right.

"Entertainment, as well as political and ideological speech," is protected by the first amendment. *Schad* v. *Mount Ephraim,* 452 U.S. 61, 65, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981). Underlying the broad pronouncement in *Schad* as to what constitutes protected speech is the recognition that the first amendment secures the expression of ideas or information.

*Cohen* v. *California,* 403 U.S. 15, 15–26, 91 S. Ct. 1780, 29 L. Ed. 2d 284, reh. denied, 404 U.S. 876, 92 S. Ct. 26, 30 L. Ed. 2d 124 (1971).

Consequently, entertainment may come within the ambit of the first amendment, but to gain protected status, that entertainment must be designed to communicate or express some idea or some information. *Metromedia, Inc.* v. *San Diego,* 453 U.S. 490, 505, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981) (dissemination of "information" protected); *Cohen* v. *California,* supra; *Ginsberg* v. *New York,* 390 U.S. 629, 649, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (opinion of Stewart, J., concurring), reh. denied, 391 U.S. 971, 88 S. Ct. 2029, 20 L. Ed. 2d 887 (1968) (the first amendment guarantees liberty of human expression in order to preserve in our nation what Mr. Justice Holmes called a "free trade of ideas"); *Joseph Burstyn, Inc.* v. *Wilson,* 343 U.S. 495, 501, 72 S. Ct. 777, 96 L. Ed. 1098 (1952).

If the court turns to whether video games constitute protected expression it should be borne in mind that "[e]ach medium of expression, of course, must be assessed for First Amendment purposes by standards suited to it, for each may present its own problems." *Southeastern Promotions, Ltd.* v. *Conrad,* 420 U.S. 546, 557, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975). In short, the Supreme Court has not articulated any precise test for determining the protection afforded by the first amendment to a given form of expression, such as entertainment.

The question of whether video games are entitled to first amendment protection presents a case of first impression in Connecticut. A survey of decisions throughout the United States demonstrates that there is some confusion about video games as a form of protected speech. As of September, 1983, only two federal courts have addressed precisely the question now

before this court, and appear to represent the majority position. Both courts categorically rejected the contention that video games are a protected form of "speech." *America's Best Family Showplace Corporation* v. *City of New York,* 536 F. Sup. 170 (E.D.N.Y. 1982); *Malden Amusement Co.* v. *City of Malden,* 582 F. Sup. 297 (D. Mass. 1983).

In *America's Best Family Showplace Corporation,* the plaintiff sought permission to install more than the four video game limit as provided by the city code. After being denied permission, the plaintiff brought an action claiming that video games are protected "speech" rendering restrictive regulatory procedures relating thereto unconstitutional. The court stated (p. 174): "In no sense can it be said that video games are meant to inform. Rather, a video game, like a pinball game, a game of chess, or a game of baseball, is pure entertainment with no informational element. That some of these games 'talk' to the participant, play music, or have written instructions does not provide the missing element of 'information.' I find, therefore, that although video game programs may be copyrighted, they 'contain so little in the way of particularized form of expression' that video games cannot be fairly characterized as a form of speech protected by the First Amendment." Similarly, the District Court in *Malden Amusement Co.* v. *City of Malden,* supra, relying on *America's Best Family Showplace Corporation* v. *City of New York,* supra, found that case to be a persuasive and thorough examination of first amendment law and held that video games are not protected speech within the first amendment.

*America's Best Family Showplace Corporation* was followed by *Tommy & Tina, Inc.* v. *Department of Consumer Affairs of the City of New York,* 117 Misc. 2d 415, 459 N.Y.S.2d 220, aff'd, 95 App. Div. 2d 724 (1983); *City of New York* v. *Rambling Ram Realty Cor-*

174

*poration,* N.Y.L.J., June 29, 1982, p. 6. Moreover, the Supreme Judicial Court of Massachusetts in a lengthy, well reasoned opinion concluded that the plaintiff in the action had not satisfied his burden of demonstrating that video games are or contain protected expression. *Caswell* v. *Licensing Commission for Brockton,* 387 Mass. 864, 867, 444 N.E.2d 922 (1983). The Massachusetts court went on to say (p. 867): "Although the affidavit indicates that video games might involve the element of communication that is the sine qua non of first amendment protection—for example a player may strive to shoot down invaders this showing is insufficient to demonstrate protected expression."

It is notable that some courts have found that video games are deserving of first amendment protection because they contain communicative and expressive elements analogous to motion picture and television entertainment. See *Oltmann* v. *Palos Hills,* No. 82CH3568 (Ill. Cir. Ct., August 20, 1982) (trial judge determined that since video games are similar to movies, they deserve first amendment protection); *Gameways, Inc.* v. *McGuire,* N.Y.L.J., May 27, 1982, p. 6. In ruling on a motion for a preliminary injunction, the *Gameways* trial judge stated: "Considering the fact that other forms of expression no more 'informative' than video games—viewing nude dancing through a coin operated mechanism—have been recognized as constitutionally protected . . . this court concludes video games are a form of speech protected by the First Amendment." Moreover, District Judge Nickerson, describing the video game "Scramble," said in dicta: "In essence, the work is a movie in which the viewer participates in the action." *Stern Electronics, Inc.* v. *Kaufman,* 523 F. Sup. 635, 639 (E.D.N.Y. 1981), aff'd, 669 F.2d 852 (2d Cir. 1982) (action for infringement of an alleged copyright).

Movies were first accorded the status of protected speech in *Joseph Burstyn, Inc.* v. *Wilson,* supra. The

court in its discussion of movies as a medium for the communication of ideas stated (p. 501): "They may affect public attitudes and behavior in a variety of ways, ranging from direct espousal of a political or social doctrine to the subtle shaping of thought which characterizes all artistic expression. The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform. As was said in *Winters* v. *New York,* 333 U.S. 507, 510 [68 S. Ct. 665, 92 L. Ed. 840] (1948): 'The line between the informing and the entertaining is too elusive for the protection of that basic right [a free press]. Everyone is familiar with instances of propaganda through fiction. What is one man's amusement, teaches another's doctrine.' " The court in *America's Best Family Showplace Corporation* v. *City of New York,* supra, 174, however, distinguished *Joseph Burstyn, Inc.* v. *Wilson,* with the assertion that "[i]n no sense can it be said that video games are meant to inform. . . . Accordingly, there is no need to draw that 'elusive' line 'between the informing and the entertaining' referred to in *Winters* v. *People of New York,* 333 U.S. 507, 510, 68 S.Ct. 665, 92 L. Ed. 840 (1948)."

The question of video games as protected speech requires a factual determination of whether video games import sufficient communicative, expressive or informative elements to constitute expression protected under the first amendment. Moreover, a resolution of this issue will also determine the standard under which the town's regulations are to be scrutinized.

If video games do not implicate first amendment problems then the validity of the defendant's regulatory scheme must be measured against less rigorous standards of due process and equal protection under the fourteenth amendment. *Rinaldi* v. *Yeager,* 384 U.S. 305, 309–10, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966).

Basically the test requires that the regulation must be "rationally related" to legitimate state concerns. Id.

On the other hand, if video games are a form of protected speech, then the defendant's regulations must pass muster under a heightened level of scrutiny. The zoning authority must demonstrate that the restrictions are "narrowly drawn [to] further a sufficiently substantial governmental interest." *Schad* v. *Mt. Ephraim,* 452 U.S. 61, 68, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981).

Each medium of expression, of course, must be assessed for first amendment purposes by standards suited to it, for each may present its own problems. It seems clear that before entertainment is accorded first amendment protection there must be some element of information or some idea communicated. That element is clearly lacking here. Therefore, this court finds that video games are not a form of speech protected by the first amendment.